IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ISAIAH LLOYD, | ) | |
| | ) | Case No. 16 CV 7475 |
| Plaintiff, | ) | |
| | ) | Judge Pallmeyer |
| v. | ) | |
| | ) | |
| CHICAGO POLICE OFFICER | ) | |
| ROCCO PRUGER, STAR #15445, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANT GRZENIA'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

Defendant, Detective Stephen Grzenia ("Defendant Grzenia"), by one of his attorneys, Scott A. Cohen, Assistant Corporation Counsel Supervisor, submits the following memorandum of law in support of his motion for summary judgment.

### STATEMENT OF THE CASE

Plaintiff alleges in this action Chicago Police Officers Rocco Pruger, Peter Theodore, Bryan Cox, and Detectives Kenneth Pisano and Stephen Grzenia violated his constitutional rights in that they conspired to and in fact did cause him to be falsely arrested, unlawfully detained, deprived of his liberty, and fabricated evidence in violation of his due process rights. Officer David Salgado, Officer Robert Ramirez, and Lauren Bridger were named defendants, but they were voluntarily dismissed by Plaintiff. (Docket #76.) The City of Chicago is a defendant for purposes of indemnification. Defendant Grzenia now moves for summary judgment as to all of the claims against him.

### STATEMENT OF FACTS

At close to midnight on July 24, 2014, Plaintiff was arrested by Officers Rocco Pruger, Peter Theodore, and Bryan Cox at a gas station located at 603 S. Independence Blvd. in Chicago, Illinois,

for the offense of aggravated robbery against Lauren Bridger ("Bridger"), then transported to the police station for processing. (56.1 ¶ 5-6.) Officer Theodore prepared the arrest report, and Officer Pruger prepared the original case incident report. (56.1 ¶ 7-8.)

On the morning of July 25, 2014, Defendant Grzenia was assigned as a detective to this case, but the arresting officers were gone for the day, so he did not speak to them. (56.1 ¶ 9-10.) Defendant Grzenia obtained and reviewed the arrest and incident reports, then contacted the victim, Bridger, and a witness, Abraham Oshel ("Oshel"), both over the phone, and relocated to the police station where he interviewed the Plaintiff. (56.1 ¶ 11.) Based on the reports he reviewed, Defendant Grzenia understood that Bridger physically saw Plaintiff at the gas station and positively identified him as the person who robbed her. (56.1 ¶ 12-13.) According to Defendant Grzenia, Bridger described the robbery to him and told him she was certain and confident about the person she identified . (56.1 ¶ 14.) Bridger testified in her deposition that when she made the identification, she was confident in the identification and believed she was choosing the person who robbed her. (56.1 ¶ 15.) When Bridger made the identification at the gas station, she viewed Plaintiff along with other individuals, but Defendant Grzenia knew nothing about those other individuals. (56.1 ¶ 16.)

Defendant Grzenia spoke to Assistant State's Attorney Andrew Yassan ("ASA Yassan"), who was assigned to the Felony Review Unit of the Cook County State's Attorney's Office, over the phone, summarized the case, and indicated Bridger positively identified Plaintiff as the robber. (56.1 ¶ 17, 19.) It is the decision of the Cook County State's Attorney's Office whether to approve felony charges. (56.1 ¶ 20.) Based solely on the information provided by Defendant Grzenia, ASA Yassan approved the felony charge of aggravated robbery against Plaintiff. (56.1 ¶ 21-22.) ASA Yassan summarized the information he learned from Defendant Grzenia in his Felony Review Unit Fact Sheet, including the information that Bridger viewed Plaintiff in a group of men and identified him

as the person who robbed her. (56.1 ¶ 23-24.) ASA Yassan did not speak to Bridger or any witnesses in this case. (56.1 ¶ 25.)

Defendant Grzenia did not testify in any criminal proceeding against Plaintiff. (56.1 ¶ 18.)

## **STANDARD OF REVIEW**

The standard for granting summary judgment is well established. Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Leaf v. Shelnutt*, 400 F.3d 1070, 1078 (7th Cir. 2005). That includes circumstances where "there is no more than some 'metaphysical doubt' whether there is a genuine dispute of material fact for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Even the "existence of a factual dispute will not bar summary judgment unless 'the disputed fact is outcome determinative under governing law.'" *Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir. 1987).

Once the moving party has met its initial burden of explaining the basis for summary judgment, the burden shifts to the non-moving party, who cannot "rest upon the mere allegations or denials of the adverse party's pleading," but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). *Accord, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in the light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248 (1986).

Thus, summary judgment is the moment of the case where Plaintiff has to show that she has evidence sufficient to convince a reasonable jury to find that the defendants violated her civil rights. *See East-Miller v. Lake County Highway Dep't*, 421 F.3d 558, 561-62 (7th Cir. 2005) (non-movant bears burden of producing evidence sufficient to support reasonable jury verdict in his favor).

**ARGUMENT**

1. **Plaintiff's Fourth Amendment False Arrest Claim Fails**

It is well-established that the existence of probable cause for an arrest is an absolute bar to any Section 1983 claim for false arrest. *See Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir.2006) *quoting Potts v. City of Layfayette*, 121 F.3d 1106, 1113 (7th Cir. 1997); *see also, Fernandez v. Perez*, 937 F.2d 368, 370 (7th Cir. 1991); *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir. 1989). "Probable cause for an arrest exists, if at the moment the arrest was made, the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent person in believing that an offense has been committed." *Gabel v. McCarty*, 1994 WL 659314, *2 (N.D. Ill. Nov. 18, 1994) (*citing Hughes v. Meyer*, 880 F.2d 967, 969 (7th Cir. 1989)). The Seventh Circuit has consistently held that "reasonably trustworthy information" can come from a single person, typically a single eyewitness or putative victim of a crime, who it seems reasonable to believe, is telling the truth. *Mustafa*, 442 F.3d at 548; *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000); *Spiegel v. Cortese*, 196 F.3d 717, 724 (7th Cir. 1999); *Sheik-Abdi*, 37 F.3d at 1247; *Grimm v. Churchill*, 932 F.2d 674, 675 (7th Cir. 1991); *Gerald M. v. Conneely*, 858 F.2d 378, 381 (7th Cir. 1988); *Gramenos v. Jewel Cos., Inc.* 797 F.2d 432, 439 (7th Cir. 1986). An officer who has "received his information from some person—normally the putative victim or an eye witness—who it seems reasonable to believe is telling the truth" has probable cause if what the complainant states, if true, would justify an arrest." *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 437-42 (7th Cir. 1986). This is true, even if the information a complaining witness relays turns out not to be truthful. *See, Id.* at 439 (stating "[p]robable cause does not depend on the witness turning out to have been right; it's what the police know, not whether they know the truth, that matters."). "If policemen arrest a person on the basis of a private citizen's complaint that if true would justify the arrest, and they reasonably believe it is true, they cannot be held liable for a violation of the Constitution merely because it later

4

turns out that the complaint was unfounded." *McKinney v. George*, 726 F.2d 1183, 1187 (7th Cir. 1984), *citing Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311 (1949); *cf. Butler v. Goldblatt Bros., Inc.,* 589 F.2d 323, 325 (7th Cir.1978). Likewise, where an officer has otherwise sufficient information, the officer's failure to conduct an investigation will not preclude a finding of probable cause. *See Gramenos*, 797 F.2d 432, at 439, *citing United States v. Edwards,* 415 U.S. 800, 807 (1974). A police officer has "no constitutional obligation to conduct any further investigation before making an arrest if they have received information from a reasonably credible victim or eyewitness sufficient to supply probable cause." *Id. at* 440.

Additionally, "criminal suspects frequently protest their innocence and a suspect's denial of guilt generally is not enough to trigger a duty to investigate in the face of a reasonably believable witness and readily observable events." *Beauchamp v. City of Noblesville, Ind*., 320 F.3d 733, 744 (7th Cir. 2003). Regardless, the Seventh Circuit is clear that "once an officer learns sufficient trustworthy information establishing probable cause, he is entitled to rely on what he knows in pursuing charges or an arrest, and is under no further duty to investigate." *Id.*

A person cannot be seized while already in police custody, so a police officer cannot be liable for the false arrest of a person already in police custody. *Alcorn v. City of Chicago*, 2018 WL 3614010 at *10. "A person can't be seized while seized any more than he can jump while jumping. He's either seized or not…." *Swanigan v. City of Chicago*, 881 F.3d 577, 584 (7th Cir. 2018). To succeed on an individual-capacity claim under Section 1983, Plaintiff must establish that the government employee was personally responsible for a deprivation of his rights. *Alcorn*, at *9 (*citing Wilson v. Warren Cty., Illinois*, 830 F.3d 464, 469 (7th Cir. 2016) (citation omitted) and *Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003) ("[Section] 1983 lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim.")).

5

In this case, Defendant Grzenia cannot be liable for false arrest because Plaintiff had already been arrested by Officers Pruger, Theodore, and Cox by the time Defendant Grzenia came to work and was assigned to investigate this case. Defendant Grzenia was not involved in any way in Plaintiff's seizure on July 24, 2014, and for this reason alone he cannot have falsely arrested Plaintiff as a matter of law.

Putting aside the fact that Defendant Grzenia did not seize Plaintiff, probable cause existed for Plaintiff's arrest based on the knowledge Defendant Grzenia possessed. Defendant Grzenia relied on the arrest and case incident reports authored by the officers who did arrest Plaintiff, and those reports indicated Bridger positively identified him as the person who robbed her. Defendant Grzenia also spoke with Bridger, and she confirmed she was certain and confident about the identification. Finally, even if the show up wherein Plaintiff was identified was flawed (as Plaintiff contends), Defendant Grzenia had no knowledge of the other individuals utilized during the show up, and he did not speak with the arresting officers about the show up. Based on everything known to Grzenia at the time he became involved with this case, probable cause exited for Plaintiff's arrest, and Defendant Grzenia is therefore not liable for falsely arresting Plaintiff. Count I should therefore be dismissed against Defendant Grzenia.

**2. Plaintiff's Fourth Amendment Deprivation of Liberty Claim Fails**

A plaintiff may seek damages on the ground that detention without probable cause violates the Fourth Amendment (applied to the states by the Fourteenth Amendment). *Manuel v. Joliet*, 137 S. Ct. 911 (2017). This is true even where legal process has gone forward but has done nothing to satisfy the probable cause requirement, for example where a judge's determination of probable cause was based solely on fabricated evidence. *Id.* at 913-914.

As discussed above, the existence of probable cause vitiates a Fourth Amendment false arrest claim. Likewise, the existence of probable cause vitiates a Fourth Amendment post-*Gerstein*

6

deprivation of liberty claim (because it is detention *without probable cause* that gives rise to such a claim). *Manuel v. Joliet*, 137 S. Ct. 911. As discussed above, probable cause existed for Plaintiff's arrest pursuant to the information available to Defendant Grzenia. It is this same probable cause that supported Plaintiff's post-*Gerstein* detention. Defendant Grzenia was informed Plaintiff was positively identified by Bridger, and Bridger confirmed this to Defendant Grzenia. Having no reason to doubt Bridger or question whether the show up itself was flawed, Defendant Grzenia had probable cause to believe Plaintiff robbed Bridger. Count IV should therefore be dismissed against Defendant Grzenia.

    3. **Plaintiff's Due Process Fabrication Claim Fails**

A police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of liberty in some way. *Saunders-El v. Rohde*, 778 F. 3d 556, 560 (7th Cir. 2015). Where a plaintiff cannot prove his liberty was deprived as a result of the allegedly fabricated evidence, he cannot make out a due process claim. *Id.* at 561. If an officer fabricates evidence and puts that evidence in a drawer never to be used again, then no due process violation occurs. *Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2015). Rather, a constitutional claim only arises when the fabrication causes the infringement of someone's liberty interest. *Id.*

As discussed above, Defendant Grzenia understood based on the information available to him that Plaintiff was positively identified by Bridger, and he had no reason to question that identification. Defendant Grzenia spoke to ASA Yassan and gave him a summary of the case, including the information that Bridger positively identified Plaintiff. Based on this summary (which ASA Yassan memorialized in in his Felony Review Unit Fact Sheet), ASA Yassan approved charges. Defendant Grzenia did not testify against Plaintiff in the criminal case. There is nothing in the record to support an argument that Defendant Grzenia fabricated evidence that was used to deprive

Plaintiff of his liberty. Plaintiff will likely point to the supplementary report authored by Defendant Grzenia to bolster his argument that Defendant Grzenia fabricated evidence, but there is no evidence in the record that these allegedly fabricated pieces of evidence were used to deprive Plaintiff of his liberty. The information available to Defendant Grzenia that ASA Yassan relied upon to charge Plaintiff (which is summarized in his Felony Review Unit Fact Sheet) was not fabricated by Defendant Grzenia, but was in fact based on reports authored by other officers as well as Bridger's positive identification. Plaintiff cannot prove Defendant Grzenia fabricated evidence used to deprive Plaintiff of his liberty, and Count II should therefore be dismissed against Defendant Grzenia.

### 4. Plaintiff's Conspiracy Claim Fails

To establish liability for conspiracy in a Section 1983 claim, the plaintiff must show: (1) the individuals reached an agreement to deprive her of her constitutional rights; and (2) their overt acts in furtherance of the agreement actually deprived her of those rights. *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). Mere encounters between defendants are insufficient to establish the requisite conspiratorial agreement. *Kiswani v. Phoenix Sec. Co.*, 529 F.Supp.2d 949, 956 (N.D. Ill 2008); *see also Redwood v. Dobson*, 476 F.3d 462, 466 (7th Cir. 2007) (finding ordinary encounters between defendants insufficient to establish an "agreement" for purposes of a conspiracy claim). As the Seventh Circuit has made clear, conspiracy is not an independent basis of liability in Section 1983 actions. *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) *Accord, e.g., Cefalu v. Village of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000).

There is no evidence that Defendant Grzenia reached an agreement with any other officer involved with Plaintiff's arrest to deprive Plaintiff of his rights, or that Defendant Grzenia and any other officer actually acted on such an agreement. To the contrary, Defendant Grzenia got to work the morning after Plaintiff had already been arrested, and he did not speak to the arresting officers

because they had left for the day. There is no indication that Defendant Grzenia had reason to doubt Bridger's positive identification, but he spoke to her anyway, and she confirmed she was certain about the identification. There is also no evidence in the record indicating Defendant Grzenia had any reason to believe the show up was flawed. The Plaintiff cannot prove Defendant Grzenia engaged in a conspiracy with any other officer, and Count III should therefore be dismissed against Defendant Grzenia.

### 5. Defendant Grzenia is Entitled to Qualified Immunity

"The necessity of protecting police officers from undue interference with their duties and from potentially disabling threats of liability has given rise to the doctrine of qualified immunity, which protects public officials performing discretionary functions against suits for damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Tangwall v. Stuckey*, 135. F.3d 510, 514 (7th Cir. 1998). Thus, under the doctrine of qualified immunity, public officials performing discretionary functions are generally shielded from liability for civil damages when their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have known. *Pearson, et al., v. Callahan*, 129 S. Ct. 808, 815 (2009) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Qualified immunity balances the important interests of holding public officials accountable when they exercise power irresponsibly and protecting public employees from "harassment, distraction and liability when they perform their duties reasonably." *Id.* at 815 (*citing Groh v. Ramirez*, 540 U.S. 551, 567 (2004)). Whether an officer is entitled to qualified immunity is a question of law the court may decide pursuant to a two-part test, and the burden of establishing each element of this test is bourne by the plaintiff. *Id.* at 815-16, 818, *interpreting Saucier v. Katz*, 553 U.S. 194 (2001); *see also, Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999); *Alvardo v. Picur*, 859 F.2d 448, 450 (1988). "In determining qualified immunity, a court asks two questions: (1) whether the facts, taken in the light

most favorable to the plaintiff, make out a violation of a constitutional right and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Hernandez v. Sheahan*, 711 F.3d 816, 817 (7th Cir. 2013) (*citing Pearson,* 555 U.S. at 232, 129 S. Ct. at 816). Courts may exercise discretion in deciding which question to address first. *Id.*

There is no question that Plaintiff's constitutional right to be free from arrest without probable cause was clearly established at the time of the incident. *Humphrey,* 148 F.3d at 725 (*citing Baker v. McCollan,* 443 U.S. 137, 142, 99 S.Ct. 2689 (1979); *Gerstein v. Pugh,* 420 U.S. 103, 111, 95 S.Ct. 854 (1975)). However, as explained above, the alleged conduct does not set out a constitutional violation; Defendant Grzenia had probable cause to believe Plaintiff committed a crime by virtue of Bridger's positive identification and the information provided by other police officers. *See supra, Gramenos*, 797 F.2d at 439 ("[w]hen an officer has received his information from some person— normally the putative victim or an eyewitness—who it seems reasonable to believe is telling the truth, he has probable cause").

Probable cause is "a commonsense determination, measured under a reasonableness standard." *Tangwall v. Stuckey,* 135 F.3d 510, 519 (7th Cir. 1998). The existence of probable cause turns on the information known to the officers at the moment the arrest is made. *Hebron v. Touhy*, 18 F.3d 421, 423 (7th Cir. 1994). Thus, the reviewing court should ask whether an official "acted reasonably under settled law in the circumstances…." *Speigel*, 196 F.3d at 723. "If a case involves a question of whether probable cause existed to support an officer's actions, the case should not be permitted to go to trial if there is any reasonable basis to conclude that probable cause existed." *Humphrey v. Staszak*, 148 F.3d 719, 727 (7th Cir. 1998). Qualified immunity protects police officers from liability unless it would have been clear to a reasonable police officer that, given the situation he confronted, his conduct violated a constitutional right. *See Pourghoraishi v. Flying J. Inc.*, 449 F.3d

10

751, 761 (7th Cir. 2006). Here, the evidence is clear that the conduct of Defendant Grzenia was reasonable, thereby entitling him to summary judgment.

The burden falls to Plaintiff to identify some authority which explains how Defendant Grzenia acted contrary to clearly established law based on the specific facts confronting him and the information he possessed at the time he acted. *Spiegel*, 196 F.3d at 723. Here, Plaintiff cannot identify any such authority, because the totality of the circumstances reveals that Defendant Grzenia acted in conformity with clearly established law, not contrary to it. Defendant Grzenia had probable cause to believe Plaintiff robbed Bridger for the reasons discussed above. Because probable cause is an absolute bar against false arrest, Defendant Grzenia is entitled to qualified immunity with respect to Plaintiff's false arrest claim.

Defendant Grzenia is also entitled to qualified immunity of Plaintiff's false arrest claim under the collective knowledge doctrine, which entitles an officer to qualified immunity if he relied in objective good faith on another officer as to the justification for the arrest. *Wilbon v. Plovanich*, No. 12 C 1132, 2014 WL 4436394, *9-10 (N.D. Ill. 2014) (citing *Graham v. Blair*, No. 10 C 772, 2011 WL 6888528, *6 (S.D. Ill. 2011)). An arresting officer need not personally be aware of the specific facts that established probable cause but instead may rely on the "collective knowledge" of the police officers involved in the investigation. *Hardiman*, 41 F.3d 1510, *2 (7th Cir. 1994) (citing *U.S. v. Ventresca,* 380 U.S. 102, 110-11, 85 S. Ct. 741 (1965)). "Thus, in the context of a damages suit, 'an officer can avoid liability by showing that someone else, who was so placed as to know, or be able to know, more than he did, could have formed a reasonable belief that the arrested person had committed a crime.'" *Hardiman*, 41 F.3d 1510, *2 (citing *Mahoney v. Kesery,* 976 F.2d 1054, 1058 (7th Cir.1992)).

So long as the officer's reliance on the "collective knowledge" is objectively reasonable, he will be accorded qualified immunity. *Hardiman* 41 F.3d 1510, *2 (citing *U.S. v. Hensley,* 469 U.S. 221,

11

232, 105 S. Ct. 675 (1985)) (an officer, who made an investigatory stop in "objective reliance" upon a wanted flyer issued by a different police department, may have a good faith defense to any civil suit)). "[I]f there are no circumstances that would lead a reasonable officer in the defendant's position to believe the officer directing the seizure cannot be trusted to assess probable cause, the defendant can rely on the lead officer in good faith and be accorded qualified immunity for any unlawful arrest." *Graham,* 2011 WL 6888528, *6 (citing *Hardiman,* 41 F.3d 1510, *4). Here, the circumstances presented to a reasonable officer in Defendant Grzenia's position would not have cause to question the probable cause assessment based on Bridger's identification. Therefore, Defendant Grzenia is further entitled to qualified immunity on Plaintiff's false arrest claim.

With respect to Plaintiff's Fourth Amendment deprivation of liberty claim, Defendant Grzenia is entitled to qualified immunity for the same reasons he is entitled to qualified immunity as to Plaintiff's false arrest claim. Defendant Grzenia reasonably relied on other officers' reports and Bridger's positive identification in his belief that probable cause supported Plaintiff's detention, and because probable cause bars Plaintiff's deprivation of liberty claim, Defendant Grzenia is entitled to qualified immunity. Furthermore, it is not true that Plaintiff had a clearly established Fourth Amendment right against post-*Gerstein* detention without probable cause in 2014. That constitutional right only became clearly established in 2017 with *Manuel.* Prior to that, the remedies available to a Plaintiff who wished to seek damages for improper post-*Gerstein* detention were either a federal due process claim or a state-law malicious prosecution claim. For these reasons, Defendant Grzenia is entitled to qualified immunity on Plaintiff's deprivation of liberty claim.

Finally, because Plaintiff's conspiracy claim is derivative of his other claims as described above, to the extent Defendant Grzenia is entitled to qualified immunity on Plaintiff's false arrest and deprivation of liberty claims, the corresponding conspiracy claim should be likewise dismissed.

**CONCLUSION**

WHEREFORE, for the foregoing reasons, Defendant Grzenia respectfully requests this Honorable Court grant his Motion for Summary Judgment and for such other relief this Court deems just and appropriate.

Date:   October 1, 2018                                  Respectfully submitted,

                                                                                        /s/ Scott A. Cohen
                                                                                        Scott A. Cohen
                                                                                        Assistant Corporation Counsel Supervisor

Scott A. Cohen, Assistant Corporation Counsel Supervisor
Iris Chavira, Assistant Corporation Counsel III
City of Chicago Department of Law
Federal Civil Rights Litigation Division
30 North LaSalle Street, Suite 900
Chicago, IL 60602
scott.cohen@cityofchicago.org
iris.chavira@cityofchicago.org
(312) 744-2568
(312) 744-6566 (fax)
Attorney No. 6292577