IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ISAIAH LLOYD, | ) | |
| | ) | Case No. 16 CV 7475 |
| Plaintiff, | ) | |
| | ) | The Honorable Rebecca Pallmeyer |
| v. | ) | Judge Presiding |
| | ) | |
| CHICAGO POLICE OFFICER | ) | |
| ROCCO PRUGER, STAR No. 15445, et al., | ) | The Honorable Sheila Finnegan |
| | ) | Magistrate Judge |
| Defendants. | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW AND ARGUMENT IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

NOW COMES, Plaintiff, ISAIAH LLOYD, by and through his attorneys, THE LAW OFFICES OF JEFFREY J. NESLUND and ROBERTSON DURIC, to submit the following Memorandum of Law and Argument in Opposition to the Defendants' Motion for Partial Summary Judgment, and in support thereof, states as follows:

## INTRODUCTION

On July 24, 2014, Plaintiff Isiah Lloyd was arrested and charged with the aggravated robbery of Lauren Bridger. After spending 497 days in the Cook County Department of Corrections, Mr. Lloyd was found not guilty of all charges. Plaintiff alleges the Defendant Officers, including Defendant Detective Stephen Grzenia, fabricated evidence and provided false information to prosecutors in violation of the Plaintiff's constitutional rights. Defendants all claim they are entitled to qualified immunity and Detective Grzenia moves for summary judgment as to Plaintiff's false arrest and 4th Amendment deprivation of liberty claim.

Defendants' arguments are specious and predicated on this Court inverting the summary judgment standard while also blatantly ignoring the factual chasm at the core of this case: whether Defendants falsely arrested Plaintiff and fabricated evidence that resulted in a deprivation of the Plaintiff's liberty. Defendant Grzenia's arguments are based on the Pollyannaish *ipse dixit* notion that as the lone Chicago Police Detective assigned to this robbery investigation he was merely a processing agent who shuffled paper work and fabricated nothing – a fact unequivocally denied by the Plaintiff, refuted by Grzenia's own reports, and contradicted by the testimony of the Assistant State's Attorney.

Detective Grzenia culls isolated facts, then bolsters them with his own self-serving denials of wrongdoing, and finishes by repeatedly invoking the mantra that probable cause based on a witness identification precludes any liability on his part. However, Grzenia's account fails to consider that not all identifications are created equal and that suspect ones will not provide an impenetrable shield to protect police misconduct. A question of fact exists that precludes summary judgment regarding whether Grzenia intentionally turned a blind eye to police misconduct at the gas station, where even the most half-hearted and inept of investigations would have revealed the victim's inherently flawed and unconstitutional identification of the Plaintiff, and thereby dissipated probable cause. (See SOAF No. 33-45). Defendant Grzenia's motion for summary judgment should also be rejected because he lied about key facts to the charging prosecutor, including fabricating an oral statement denied by Mr. Lloyd in order to ensure the approval of criminal charges. (SOAF No. 24-29). *See BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) (defendants lacked probable cause for an arrest when simple questions would have led to important information exonerating plaintiffs from the alleged crime); *Moore v. The Marketplace Restaurant*, 754 F.2d 1336, 1345-1346 (7th Cir. 1985) (holding that officers did not

have probable cause despite witness's complaint because arrest could have been avoided if a proper investigation had been conducted). It should be for a jury to decide whether Detective Grzenia is the incompetent unwitting paper pusher he now claims or rather a willing and active participant in the deprivation of Plaintiff's rights that robbed Mr. Lloyd of 16 months of his life.

## FACTUAL BASIS FOR PLAINTIFF'S CLAIMS

Plaintiff incorporates into his Memorandum of Law and Argument in Opposition to Defendants' Motion for Partial Summary Judgment, his Response to Defendant's Rule 56.1(a)(3) Statement of Uncontested Facts, and Plaintiff's Rule 56.1(B)(3)(c) Statement of Additional Facts, hereinafter referred to as "SOAF."

## SUMMARY JUDGMENT STANDARD

In assessing a motion for summary judgment, all facts and reasonable inferences drawn must be viewed in the light most favorable to the non-moving party. *Valley Liquors, Inc. v. Renfield Importers, Ltd.,* 822 F.2d 656, 659 (7th Cir. 1987). At this stage, a court does not weigh the evidence, judge credibility, or determine the truth of the matter; instead, it decides whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby,* 477 U.S. 242, 249–50, 106 S. Ct. 2505 (1986). Summary judgment should not be granted unless it is clear that a trial is unnecessary. *Liberty Lobby,* 477 U.S. at 255. Any doubt as to the existence of a genuine issue should be resolved against the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–159, 90 S. Ct. 1598 (1970).

## ARGUMENT

**Defendant Grzenia's Motion For Summary Judgment On The Fourth Amendment Claims Should Be Denied Where There Are Questions Of Fact Regarding The Scope And Validity Of His Purported Investigation And Whether He Fabricated Evidence To Obtain Felony Charges Against Plaintiff.**

3

Defendant Grzenia's appears to present a multi-faceted and layered argument that he is entitled to summary judgment for a number of discrete reasons. All his arguments, however, have the same simple basic premise at their core – Grzenia's claim that he cannot be held liable because Lauren Bridger identified Isaiah Lloyd. According to Grzenia, the documentation of that purported identification, however intentionally and inherently improper and suggestive, provides both unchallengeable probable cause and the forgiving blanket of qualified immunity for all his actions however incompetent and/or dishonest. No matter how these facts are shaded, sculpted, or sold, there is no way to get around the two clear and distinct versions of events presented by the underlying facts that produce a genuine issue of material fact concerning Defendant Grzenia's role and intent in the unlawful deprivation of Plaintiff's liberty.

> ### A. The Reports of the Initial Officers And Grzenia's Alleged Cursory Phone Call With Bridger Do Not Support Summary Judgment On The Fourth Amendment Claims In Light Of Grzenia's Fabrication Of Evidence

Defendant Grzenia initially claims that he cannot be held liable for false arrest because: 1.) Plaintiff was already arrested before Grzenia became involved in the case; 2.) there was probable cause based on Bridger's purported identification that was documented in the initial reports; and 3.) Grzenia confirmed this identification in a phone call with Bridger and never had any knowledge of any flaws in the identification process.

In framing his argument, Grzenia has conveniently reduced this entire case to his own blind reliance on a single identification – one that was intentionally and inherently suggestive from its inception – and his own rubber stamp "investigation" confirming only the outcome of that admittedly flawed identification procedure. (SOAF No. 42, 43). Grzenia also conveniently omits a litany of facts that demonstrate that he refused to conduct any real investigation and

4

instead chose to bolster that intentionally suggestive identification with fabricated evidence to obtain felony charges against Plaintiff.

Defendant Grzenia fails to appreciate that the continuation of even a lawful arrest violates the Fourth Amendment when the police discover additional facts dissipating their earlier probable cause. *People v. Quarles,* 88 Ill. App. 3d 340, 410 N.E.2d 497 (1980) (when police were informed defendant lived in apartment they should have released him since they no longer had probable cause for offense of attempted burglary). Although the police must be allowed some margin of error, a police officer evaluating a situation for probable cause must utilize the means at hand to minimize the risk of error. See 1 LaFave, Search & Seizure § 3.2, at 467. Other circuits have also established that factual circumstances may require a police officer to conduct more than a superficial investigation before determining probable cause. *Sevigny v. Dicksey*, 846 F.2d 953, 957-58 (4th Cir. 1988) (no probable cause when the officer unreasonably failed to interview witnesses at the scene of an accident who would have corroborated plaintiff's story); *Merriman v. Walton,* 856 F.2d 1333, 1335 (9th Cir. 1988) (further inquiry required for probable cause when kidnapping suspect was arrested after the police knew the victim was safely at home, the suspect was the victim's long time boyfriend and cooperated with police); *Lusby v. T.G. & Y. Stores, Inc.,* 749 F.2d 1423, 1432 (10th Cir. 1984) *vacated on other grounds sub nom.*, *City of Lawton, Okla. v. Lusby*, 474 U.S. 805, 106 S. Ct. 40 (1985), *aff'd after reconsideration*, 796 F.2d 1307 (10th Cir.) (no probable cause where officer refused to interview cashier in shoplifting case who would have confirmed plaintiff paid for merchandise).

1. **Det. Grzenia ignored evidence that would have dissipated probable cause**

The severely circumscribed scope of Grzenia's *pro forma* investigation supports the denial of summary judgment, not a grant of summary judgment to absolve him of liability.

5

Defendant Grzenia claims he printed the initial reports from the arresting officers, but never spoke with them. Rather than negating his liability, his self-imposed investigational blinders demonstrate Grzenia's failure to do even a minimal amount of investigation. A simple question to the arresting officers as to the circumstances of the critical identification procedure used to (falsely) identify Plaintiff would have shown that having the only individual with short hair stand in handcuffs in a line of kneeling men with dreadlocks would never pass muster. (SOAF No. 42, 43). Every police officer in this case has confirmed that such an identification procedure – one that has been attested to by witnesses in this case including Ms. Bridger – would never be considered anything but inherently suggestive. (SOAF No. 38-40). This is particularly so where the witness was primed by officers telling her that the robber had been caught "red-handed" with her property in the vehicle they were searching, (SOAF No. 33, 35) accentuated by the staged recovery of her purse once she arrived (SOAF No. 36) with the Plaintiff standing outside the vehicle in handcuffs on his mark. (SOAF No. 34).

Grzenia's investigative shortcomings were rife throughout this case, begging the question as to whether they were deliberately so. The record establishes that some five hours receiving this assignment, Grzenia was already calling Felony Review seeking aggravated robbery charges against Isaiah Lloyd. Besides ignoring every detail about the identification procedure, Detective Grzenia failed to do a whole host of basic investigative work. Detective Grzenia never even attempted to verify or "break" the Plaintiff's alibi that he was with his cousin, Brandon Williams (SOAF No. 50, 51); a simple confirmation of this fact would have dissipated probable cause. Detective Grzenia never listened to the OEMC audio that established that the only description Bridger was capable of giving immediately after the robbery was of a black male in a jogging suit (SOAF No. 4); such a fact would have certainly prompted more investigation into Bridger's

ability to make a legitimate identification. Nor did Detective Grzenia order any forensics to be conducted on the red Chevy Impala or any of the proceeds reportedly discovered therein to tie those to Mr. Lloyd.

Most problematic, Detective Grzenia never investigated the use of the red Chevy Impala, registered to Tajuana Bloodworth, which was used to commit the robbery. (SOAF No. 14). A simple phone call to Ms. Bloodworth would have established: 1.) this car was not used by Plaintiff; 2.) the true owner (Ms. Bloodworth) had loaned that car to her boyfriend Jason Johnson, a male black who fit the general vague description of the robber; 3.) Mr. Johnson told Ms. Bloodworth he abandoned the car at the gas station when the police arrived; and 4.) there was no connection between Mr. Lloyd and Ms. Bloodworth or her vehicle. (SOAF No. 16). Defendant Grzenia's motion fails because a question of fact exists as to whether he intentionally ignored evidence that would have dissipated probable cause for Plaintiff's arrest. Grzenia's attempts to use the ostrich defense or simply write off his (in)actions off as sloppy police work are simply not sufficient to preclude summary judgment.

**2. Det. Grzenia's fabrication of evidence to ASA Yassan precludes summary judgment**

Defendant Grzenia's claim must also fail because there are genuine issues of material fact as to whether Grzenia presented false and fabricated evidence to the charging prosecutor in order to obtain approval of felony charges against Plaintiff. However spun, the fabrication of evidence casts a long shadow over Detective Grzenia's role and intent in his investigation of this robbery. Underlying Defendant's flawed position is the unspoken false assumption that his act of falsifying reports and lying to the Felony Review State's Attorney was somehow reasonable. This is simply incorrect. As the Seventh Circuit outlined in *Petty v. City of Chicago*, 754 F.3d

416, 423 (7th Cir. 2014), an allegation that a police officers created evidence that they knew to be false is the "hallmark of a fabrication case." *Id*.

Here, the record establishes that during the course of his investigation Grzenia checked the CPD "Hot Desk" database and, like the Defendant officers on the scene, learned that the red Chevy Impala was owned by and registered to Tajuana Bloodworth, not Isaiah Lloyd. (SOAF No. 20). Despite knowing this incontrovertible fact, Detective Grzenia wrote in his official report that Isaiah Lloyd "owned" the red Chevy Impala from which the proceeds and pellet gun were recovered. (SOAF No. 22). Despite his knowledge and the accompanying documentation from the CPD "Hot Desk," Grzenia inexplicably told the charging prosecutor that the proceeds and gun were recovered from Plaintiff's cousin's van, not the red Chevy Impala. (SOAF No. 27).

Despite absolutely no connection between Lloyd and the Ms. Bloodworth's red Chevy Impala, Grzenia told the charging prosecutor that Lloyd made a statement that he "had no idea how the items got into his cousin's car" - a statement that Lloyd categorically denied making and Grzenia knew was untrue. (SOAF No. 27-29). The reports Grzenia claims he reviewed confirmed that Ms. Bridger's belongings, as well as the pellet gun, were all recovered from the front seat of Ms. Bloodworth's red Chevy Impala and that Plaintiff had no connection to that vehicle. (SOAF No. 19, 29). These genuine issues of fact regarding Grzenia's fabrication of evidence preclude summary judgment on both of Plaintiff's Fourth Amendment claims.

Defendant Grzenia's blame-shifting argument that he may escape liability because he was not involved in the initial seizure fails to appreciate his role in the initial stages of the charging process. Defendant Grzenia fails to understand that at its core, the Fourth Amendment addresses the misuse of power, not the accidental effects of otherwise lawful government conduct." *Brower v. County of Inyo*, 489 U.S. 593, 596, 109 S. Ct. 1378 (1989). Regardless of

whether present at the initial seizure or first involved as an investigator following the suspect's return to the station in anticipation of felony charges, a police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest. *BeVier*, 806 F.2d at 128. Because the arrest could have been avoided if Grzenia had conducted any semblance of an investigation, summary judgment is improper. *Moore*, 754 F.2d at 1345-1346 ("it is incumbent upon law enforcement officials to make a thorough investigation and exercise reasonable judgment before invoking the awesome power of arrest and detention").

### 3. Defendant's case law distinguished

Defendant's relies on *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432 (7th Cir. 1986), to support his claim that a witness's testimony standing alone is sufficient to establish probable cause and negate an officer's duty to conduct any further investigation is misplaced. In *Gramenos*, a store security guard was the sole eyewitness to plaintiff's shoplifting charge and his statement alone was used to establish probable cause. *Gramenos*, 797 F.2d at 439. Although the court noted that a single witness's complaint is sufficient to establish probable cause, the security guard was distinguished as "not just an eyewitness." *Id*. The distinction was based upon the reasonable reliability that a security guard as a professional in an institutional setting would not bring a claim based on a grudge or without careful consideration. *Id*. In other words, the police had no reason to question the veracity of the guard's information.

In contradistinction, Lauren Bridger was a young civilian victim who saw her assailant for a matter of seconds (SOAF No. 1) during which she was admittedly focused on the gun. (SOAF No. 2). Unlike the security guard in *Gramenos*, Bridger's identification of Plaintiff could be questioned on a number of grounds including the brief nature of the encounter, her initial vague description (male black in a jogging suit), and, most importantly, the inherently suggestive and

improper circumstances of the identification at the gas station, including the staged recovery of her purse from the van after being told the offender was already caught red-handed. (SOAF No. 33-45). This case and the one presented in *Gramenos* are apples and oranges; recognizing the Defendant's application of *Gramenos* here would establish a bright-line rule equating *any* witness identification, no matter how intentionally suggestive and tainted by police misconduct, with the presence of probable cause. Such a course would serve as a standing invitation for rampant police abuse.

Defendant's arguments are completely untethered to, and do not even address, the controlling summary judgment standard – the existence of a genuine issue of material fact. Throughout his argument, Defendant effectively inverts the summary judgment standard – taking all facts and reasonable inferences in this own favor rather than in the light most favorable to the Plaintiff. Applying the appropriate standard, there are obvious questions of material fact concerning the 1.) the reasonableness of Grzenia's actions; 2.) Grzenia's role in the arrest and prosecution of Mr. Lloyd; 3.) whether he fabricated evidence in order to ensure that Plaintiff would be charged with aggravated robbery; and 4.) globally, whether he was an innocent dupe or was aware of the identification shenanigans of his fellow officers and decided to whitewash that misconduct in his reports and solidify the case against Mr. Lloyd by attributing ownership of the red Chevy Impala to Lloyd and fabricating an oral statement to ASA Yassan.

*B. Plaintiff's Due Process Claim Survives Summary Judgment Because There Are Genuine Issues Of Material Fact Regarding Grzenia's Fabrication of Evidence.*

Defendant Grzenia next makes the specious claim that summary judgment is warranted because there is no proof that his fabrication of evidence actually deprived Plaintiff of his liberty. Defendant Grzenia's deliberately obtuse argument should be recognized and rejected for what it

is – another attempt to escape liability by pulling the covers over his head and repeatedly denying any wrongdoing despite direct evidence to the contrary.

The Seventh Circuit has consistently held that a police officer that manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of his liberty in some way. *See Whitlock v. Brueggeman*, 682 F.3d 567, 580 (7th Cir. 2012); *Fields v. Wharrie*, 740 F.3d 1107 (7th Cir. 2014). The Seventh Circuit equates "false testimony" with "fabricated testimony" *Petty*, 754 F.3d at 422.

Here, Detective Grzenia was the sole source of all information given to ASA Yassan, who approved felony charges of aggravated robbery against Mr. Lloyd over the phone – charges for which he was jailed for over 450 days until his release after being found not guilty. A jury could easily conclude that Det. Grzenia decided to kill two birds with a single stone (lie) – fabricate evidence to bolster and seal the case against Plaintiff while at the same time hiding the potentially problematic issue of the true owner of the vehicle. Both were accomplished here by telling the ASA that the proceeds from the robbery were recovered in a vehicle belonging to Plaintiff's cousin, a statement Grzenia undeniably knew was false. (SOAF No. 19, 23).

In a similar vein, it is certainly a reasonable inference that Grzenia was well aware of the suggestive nature and short-comings of the identification procedure based on his discussions with Bridger, but decided to plow ahead anyway, sprinkling additional false inculpatory evidence along the way. Such a reasonable inference is also circumstantially supported by the inexplicably paltry nature of Grzenia's investigation as outlined above. Rather than attempt to interview Ms. Bloodworth to see who had her red Chevy Impala at the time of the robbery, a reasonable inference is that it was easier for Grzenia to play his role in the assembly line of injustice and just list Isaiah Lloyd as the "owner" (SOAF No. 14, 22), fabricating an expedient admission for the

11

Felony Review prosecutor to get charges approved.

Defendant Grzenia cannot force his pure version of events upon this Court to gain summary judgment. Like the criminal trier of fact, a jury could conclude that Isiah Lloyd had nothing to do with this robbery. A civil jury may further conclude that Grzenia fabricated evidence in order to justify charging Mr. Lloyd with the robbery. This case presents multiple distinct and often irreconcilable versions of events concerning the intent and reasonableness of Defendant Grzenia's conduct. *Morfin v. City of East Chicago,* 349 F.3d 989, 1004 (7th Cir. 2003) (reversing the district court's grant of summary judgment in favor of arresting officers). In such cases, "it is almost certain that here are genuine issues of material fact in dispute." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *Miller v. Gonzalez*, 761 F.3d 822, 828 (7th Cir. 2014).

C. *Defendant Grzenia Is Not Entitled To Summary Judgment On Plaintiff's Conspiracy Claim.*

Defendant Grzenia next asserts in a conclusory manner that he is entitled to summary judgment on Plaintiff's conspiracy claim. Predictably, Defendant returns to his well-worn themes that he did not talk to the arresting officers and had no reason to believe that the identification was flawed, and thus he cannot be held liable for conspiracy.

To establish a Section 1983 conspiracy claim, Plaintiff must provide evidence of only two elements: 1) the defendant police officers had an express or implied agreement to deprive him of his constitutional rights, or engaged in concerted acts sufficient to raise a reasonable inference of mutual understanding among the Defendants; and 2) Plaintiff actually suffered a deprivation of those rights as a result of an overt act taken in furtherance of the conspiracy. *Walker v. Thompson*, 288 F.3d 1005, 1008 (7th Cir. 2002); *Admunson v. Chicago Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000).

Defendant's contention that there is no evidence of an express or implied agreement should be rejected as there is a genuine issue of material fact concerning whether there was a conspiriatorial agreement amongst the Defendants. The Seventh Circuit has recognized that a conspiracy is rarely susceptible of direct proof; instead it can be established by circumstantial evidence and a court can infer a conspiracy when it is unlikely acts would have been performed by the conspiracy members without an agreement. *See Williams v. Seniff,* 342 F.3d 774, 785 (7th Cir. 2003); *Kunik v. Racine County*, 946 F.2d 1574, 1580 (7th Cir. 1991). The gist of a conspiracy claim is not the agreement itself, but the acts performed in furtherance of the agreement. *See W. Prosser, Torts* §46 at 243. Thus, a defendant who understands the general objectives of the conspiratorial scheme, accepts them, and agrees, either explicitly or implicitly, to do his part to further those objectives is liable as a conspirator. *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). Police officers and supervisors who know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see, are liable under § 1983 conspiracy claim. *Id*. at 992-993.

Here, the dovetailing nature of the reports of the initial Defendant officers and Defendant Grzenia's own report provides strong circumstantial evidence of a common scheme to charge Plaintiff with a criminal act they knew he did not commit. *See Phillips v. City of Chicago*, 14 C 9372, 2015 WL 5675529, at *7 (N.D. Ill. Sept. 24, 2015). In a similar vein, that Grzenia and his fellow Defendant officers all claim to have either witnessed, or have spoken to Bridger, regarding the intentionally and inherently suggestive and improper identification process, shows an interlocking narrative designed to artificially bolster the case against Lloyd by removing all red flags and smoothing the rough edges that could have caused the prosecutor to reject charges and not go forward with Lloyd's prosecution. *See Geinosky v. City of Chicago,* 675 F.3d 743,

749 (7th Cir. 2012) ("[i]t is a challenge to imagine a scenario in which Defendant Officers' alleged evidence fabrication, *Brady* violations, and otherwise lawless behavior "would not have been the product of a conspiracy"").

*D. All Defendants are not entitled to summary judgment on qualified immunity*

All Defendants have moved for partial summary judgment claiming that they are entitled to qualified immunity because the post-*Gerstein* unlawful detention claim ground in the Fourth Amendment was just recently recognized in *Manuel v. City of Joliet*. This specious claim is expressly predicated on the untenable position that a constitutional right to be free from unlawful detention post-*Gerstein* did not exist prior to the *Manuel* decision.

Defendants' argument is without merit as ten Circuit Court of Appeals have all recognized the existence of this fundamental right for decades. The Seventh Circuit never *refused* to acknowledge the existence of the right to be free of unlawful detention, but rather believed that the Illinois malicious prosecution tort provided an adequate remedy for protection of that right. For Defendants to succeed on this claim, they would have had to think that they could lawfully detain individuals following a bond hearing even though there was no probable cause present. It would be difficult, if not impossible, to find a single law enforcement officer that genuinely believed such an outlandish and absurd principle.

Defendant Grzenia further asserts that he is entitled to summary judgment for a variety of grounds, each rooted in some manner in the doctrine of qualified immunity. Grzenia's argument runs the gamut from discretionary functions that do not violate a clearly established constitutional right to the safe harbor of the collective knowledge doctrine. Each argument, however, circles back to the same refrain that Defendant Grzenia has used as a foundation for each of his arguments – there was probable cause for the arrest of Mr. Lloyd based on Bridger's

identification and that he had no reason to doubt the validity of that identification.

Qualified immunity shields government officials from liability for performing discretionary actions within their official capacity so long as the actions do "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Eversole v. Steele*, 59 F.3d 710, 717 (7th Circ. 1995). When the qualified immunity inquiry cannot be disentangled from disputed facts, the issue cannot be resolved without a trial." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009). "If the parties were disputing who did what and when, any questions of qualified immunity would have to wait until those fact issues were resolved." *Meyer v. Robinson*, 992 F.2d 734, 737 (7th Cir. 1993).

This Court cannot conclude the Defendant is entitled to a qualified immunity defense where there are material facts in dispute. *Apostol v. Landau*, 957 F.2d 339, 342-43 (7th Cir. 1992). Given the obvious question of fact as to whether Det. Grzenia fabricated evidence and lied to the Felony Review Assistant State's Attorney to bolster the case against the Plaintiff, Grzenia cannot seek pretrial refuge behind a claim of qualified immunity.

Furthermore, Grzenia's conduct in fabricating evidence cannot reasonably be construed a "mistake" protected by the qualified immunity doctrine. The purpose of qualified immunity is to shield public officers from liability where "a change in the law or . . . enduring legal uncertainty . . . makes it difficult for the officer to assess the lawfulness of the act in question *before* he does it." *Williams v. Lieber*, 491 F.3d 710 (7th Cir. 2007), *citing Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999). However, the qualified immunity defense does not provide protection for those who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Pourghoraishi v. Flying J, Inc.*, 449 F.3d at 751, 761 (7th Cir. 2006).

Simply put, qualified immunity does not, nor should it, shield officers who engage in

intentional misconduct. Viewing the evidence in the light most favorable to the Plaintiff, Defendant Grzenia knew as an experienced detective that he should not fabricate evidence to bolster his shabby investigation and provide cover for an unconstitutional identification procedure to push through felony charges. This common sense principle has been clearly established for decades. *See e.g.*, *Mooney v. Holohan,* 294 U.S. 103, 110, 112–13, 55 S. Ct. 340 (1935). Thus, a material question of fact exists as to whether Defendant's conduct was an intentional violation of the Plaintiff's constitutional rights, which precludes summary judgment.

## CONCLUSION

Defendant's motion for summary judgment should be summarily denied as it is not well grounded in law or fact. Based on the argument and authority outlined above, there are clear issues of material fact from which a reasonable jury could find for Plaintiff on his false arrest, deprivation of liberty, and conspiracy claims against Defendant Grzenia. Accordingly, Plaintiff respectfully requests this Honorable Court enter an order denying Defendant's motion for summary judgment.

Respectfully submitted,

/s/ Jeffrey J. Neslund
Jeffrey J. Neslund

Jeffrey J. Neslund
Law Offices of Jeffrey J. Neslund
20 N. Wacker Drive, Suite 3710
Chicago, IL 60606
(312) 223-1100

Robert Robertson
Robertson Duric
One N. La Salle St., Suite 300
Chicago, Illinois 60602
(312) 223-8600