Officer Bryan Cox
July 25, 2017

1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ISAIAH LLOYD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| - vs - | ) 16 CV 7475 |
| | ) |
| CHICAGO POLICE OFFICER ROCCO | ) |
| PRUGER, STAR #15445; CHICAGO | ) Judge Pallmeyer |
| OFFICER PETER THEODORE, | ) |
| STAR #10523; CHICAGO POLICE | ) Mag. Finnegan |
| OFFICER BRYAN COX, STAR #19328; | ) |
| CHICAGO POLICE DETECTIVE KENNETH | ) |
| PISANO, STAR #20205; CHICAGO | ) |
| POLICE DETECTIVE STEPHEN GRZENIA | ) |
| STAR #20710; OTHER UNKNOWN | ) |
| CHICAGO POLICE OFFICERS; LAUREN | ) |
| BRIDGER; and THE CITY OF CHICAGO | ) |
| a Municipal Corporation, | ) |
| | ) |
| Defendants. | ) |

The Discovery Deposition of

OFFICER BRYAN COX

taken in the above-entitled cause, before BERNA DAVIS, a Certified Shorthand Reporter in the State of Illinois, taken at The Law Offices of Jeffrey J. Neslund, 20 North Wacker Drive, Suite 3710, Chicago, Illinois, 60606, on the 25th day of July, A.D., 2017, commencing at approximately 1:07 p.m.

Wadlington Reporting Service, Inc.
(312) 372-5561

Pltf's Ex. L

Officer Bryan Cox
July 25, 2017

```
                                       18
 1      A   As you turned in it would have been --
 2          If you're looking east we would
 3   have been west of this red car and the van.
 4          MR. NESLUND: Okay. Let me get some
 5   photographs.
 6          (WHEREUPON, Exhibit No. 1 was
 7          marked for identification and
 8          tendered to the witness.)
 9   BY MR. NESLUND:
10      Q   Okay. Officer, showing you what we have
11   marked as Exhibit 1 for your deposition, do you
12   recognize that as the BP gas station where the
13   arrest of Mr. Lloyd took place?
14      A   Yes.
15      Q   All right. And just to get my bearings
16   straight, which street runs along the bottom here?
17      A   That's Independence.
18      Q   That's Independence.
19          And then Harrison runs east-west
20   on the left side of the photograph?
21      A   Correct.
22      Q   All right. Your car, I think you told
23   me you came off of Independence and then you
24   stopped. I know it's kind of hard to see.
```

```
                                       19
 1   There's a bunch of gas -- what do you call
 2   them? -- different stations, I guess. Where was
 3   the red car parked?
 4      A   Right where that white SUV, or whatever
 5   this van is right here (indicating).
 6      Q   Okay. You can go ahead and just circle
 7   that if you can.
 8      A   Circle the car?
 9      Q   Yeah. Where the red car was.
10          (Witness complies.)
11          MR. NESLUND: Let the record reflect
12   Officer Cox has circled the white, it looks like a
13   station wagon, whatever the white vehicle is, on
14   the far right gas pump. Is that correct?
15          THE WITNESS: Correct.
16   BY MR. NESLUND:
17      Q   And Mr. Lloyd, you told me already, was
18   somewhere between the gas pump and the car when
19   you first observed him; right?
20      A   Correct.
21      Q   All right. And then if you take the
22   black marker and draw, like, a square in the
23   approximate location of the van, where was the
24   van?
```

```
                                       20
 1      A   It would have been somewhere in here
 2   (indicating).
 3      Q   Okay. And then if you can put maybe
 4   another square -- and we'll put maybe an X inside
 5   the square for your squad car when it came to a
 6   stop.
 7          (Witness complies.)
 8   BY MR. NESLUND:
 9      Q   Okay. So your car, when it came to a
10   stop --
11          MR. NESLUND: And, for the record,
12   Officer Cox has put a square with an X between
13   where the red car was and the square he made for
14   the van. Is that correct?
15          THE WITNESS: Correct.
16   BY MR. NESLUND:
17      Q   All right. And your car was facing, it
18   would have been eastbound?
19      A   Yes, east.
20      Q   Okay. Once Mr. Lloyd is placed in
21   handcuffs is he placed inside your car? Is he --
22          Well, what happens to Mr. Lloyd
23   after he's cuffed?
24      A   He's detained with the other individuals
```

```
                                       21
 1   that were associated with the van.
 2      Q   All right. And they were also
 3   handcuffed?
 4      A   They were.
 5      Q   Okay. All right do you remember who
 6   actually cuffed Mr. Lloyd, whether it was yourself
 7   or Officer Pruger or Officer Theodore?
 8      A   I believe it was Officer Pruger.
 9      Q   Okay. The other individuals, how many
10   other people that were by the van or in the van
11   were also handcuffed?
12      A   About five or six.
13      Q   Okay. And were they cuffed
14   individually? Were they cuffed together?
15      A   They were handcuffed together.
16      Q   Did you, or any of the officers that
17   were with you, did you search the van?
18      A   Other officers searched the van.
19      Q   Do you know who it was that searched the
20   van?
21      A   I don't.
22      Q   Were these uniformed officers? Plain
23   clothes?
24      A   I think they were uniformed.
```

6 (Pages 18 to 21)

Officer Bryan Cox
July 25, 2017

**Page 22**

1  Q   Okay. And you were working in plain
2  clothes; is that correct?
3  A   Yes.
4  Q   Were any proceeds from the robbery, to
5  your knowledge, recovered from inside the van?
6  A   No.
7  Q   All right. Let's talk about the red
8  car. Did you ever go over to where the red car
9  was by the gas pump?
10 A   I did.
11 Q   And was the car --
12     Do you remember, was it running?
13 Was it on?
14 A   I don't think so.
15 Q   Okay. And did you observe any proceeds
16 from the robbery inside the red car?
17 A   I did.
18 Q   And tell me about that. What did you
19 see?
20 A   There were, on the passenger seat on the
21 red car there was a purse, cell phone, some other
22 miscellaneous things that were with the purse and
23 the phone. And there was a -- at the time there
24 was a handgun on there too.

**Page 23**

1  Q   Okay. Now, did you recover the proceeds
2  or the handgun from the car?
3  A   I recovered the proceeds.
4  Q   All right. And who --
5      This turned out to be a pellet
6  gun; correct?
7  A   Yes.
8  Q   But I understand it looked like a real
9  gun. Would recovered that from the car?
10 A   I think Officer Theodore.
11 Q   All right. The other guys, the five or
12 six individuals that were detained from the van,
13 can you describe them to me at all?
14 A   I just remember them being younger male
15 Blacks, you know, like early 20s.
16 Q   Anything about the clothing or hairstyle
17 that you remember?
18 A   No. There were numerous. I don't
19 remember if they all had --
20     I know they all didn't have
21 short hair and they all didn't have braids. It
22 was mixed.
23 Q   Now, eventually Ms. Bridger, the victim,
24 arrives for a show-up; correct?

**Page 24**

1  A   Yes.
2  Q   All right. Before she arrived did you
3  have any contact with the officers that brought
4  her to the gas station?
5  A   No.
6  Q   Did you get on your radio and put out
7  that you had located the red car and you had
8  people in custody?
9  A   I don't know at this time if I did. I
10 believe somebody did, but I'm not 100 percent sure
11 on that.
12 Q   All right. Now, at some point after
13 everybody is in cuffs, is that when -- who are --
14     The other two guys, Salgado and
15 Ramirez, arrive at some point?
16 A   Yes.
17 Q   Okay. Once everybody is in cuffs --
18 going back to Mr. Lloyd specifically -- was he
19 ever placed in the back seat of a squad car before
20 the identification procedure?
21 A   No.
22 Q   Okay. All right. Explain to me what
23 happens then when Ms. Bridger arrives. She's with
24 a couple of other officers; correct?

**Page 25**

1  A   Yes.
2  Q   All right. And are they in a marked
3  squad car?
4  A   Yes.
5  Q   All right. And when the marked squad
6  car arrives, tell me what happens.
7  A   The marked squad car shows up with the
8  victim. Officer Pruger goes and talks with the
9  officers that had the victim.
10 Q   All right. Let me stop you there.
11     Where were you when Officer
12 Pruger went and talked with those officers?
13 A   I was over by the van.
14 Q   Okay. From where you were at the van
15 could you hear what, if anything, Pruger --
16 Officer Pruger was saying to the other officers
17 that arrived with Ms. Bridger?
18 A   No.
19 Q   And do you remember who else was with
20 you by the van?
21 A   Officer Theodore was for sure. I don't
22 know who else was.
23 Q   All right. And when Officer Pruger went
24 to talk with the officers that arrived with

Officer Bryan Cox
July 25, 2017

**Page 46**

1  the gas station; correct?
2  A  Correct.
3  Q  At any time when Ms. Bridger arrived,
4  was Mr. Lloyd in the middle of the lot between two
5  squad cars with the other men in handcuffs on the
6  ground behind him kneeling?
7  A  No.
8  Q  Okay. As far as the criminal case --
9      Well, let me back up. If it was
10 done in that manner that would be improper;
11 correct?
12     MR. JOHNSON: I'm going to object to the
13 extent that it calls for speculation.
14     You can answer the question.
15     THE WITNESS: Yes.
16 BY MR. NESLUND:
17 Q  And obviously suggestive; correct?
18     MR. JOHNSON: Objection to form,
19 foundation, legal conclusion.
20     You can answer.
21     THE WITNESS: Correct.
22 BY MR. NESLUND:
23 Q  In the criminal case, did you ever
24 testify --

**Page 47**

1  A  No.
2  Q  -- in the trial or a preliminary hearing
3  or anything like that?
4  A  No, I didn't.
5  Q  Do you know --
6      Did you go to the preliminary
7  hearing?
8  A  No.
9  Q  Prior to the identification procedure --
10     And I understand you didn't
11 speak to Ms. Bridger but bear with me. Prior to
12 the identification procedure did you ever inform
13 Ms. Bridger that the offender was already
14 apprehended?
15 A  No.
16 Q  Did you hear any other officer inform
17 Ms. Bridger that the offender was already
18 apprehended?
19 A  No, I didn't.
20 Q  Did you ever recover any proceeds from
21 the van?
22 A  No.
23 Q  Did you ever inform Ms. Bridger that her
24 proceeds were recovered from the van?

**Page 48**

1  A  No.
2  Q  I think I'm almost done.
3      You never actually saw Mr. Lloyd
4  in the car -- I think I already asked you that --
5  correct?
6  A  I did not see him in the car.
7  Q  You never saw him touch the car;
8  correct?
9  A  No.
10 Q  Let me ask you about when we talk about
11 hold for investigation.
12     And I understand you're not a
13 detective; correct?
14 A  Correct.
15 Q  But as far as when that car is held for
16 investigation, what is your understanding of what
17 is going to happen next, as far as this car in
18 this particular -- the investigation of this
19 crime?
20     MR. JOHNSON: Can I understand the
21 question? When you say, "this crime," you mean
22 like in general or this incident?
23     MR. NESLUND: Specifically this
24 incident.

**Page 49**

1  BY MR. NESLUND:
2  Q  Like, this red car that you drove and
3  then it was held for investigation, what was your
4  understanding of what was going to happen next?
5      MR. JOHNSON: I'm going to object to the
6  form and foundation, calls for speculation.
7      But you can answer the question.
8      THE WITNESS: As far as the crime part
9  of this, it's going to be -- they're going to
10 check it for fingerprints, run the plate, notify
11 who the owner -- notify the owner that their car
12 is here, try to determine how that car got into
13 someone else's possession. An ET will process the
14 vehicle. And then, to my knowledge, it gets
15 returned to the owner.
16 BY MR. NESLUND:
17 Q  Okay. Do you know if any of that was
18 done in this case?
19 A  After the paperwork was done, not to my
20 knowledge. I don't know.
21 Q  Okay. All right. If the description
22 from the victim was that the person who robbed her
23 was wearing a faded jogging suit or a hoody, and
24 if Mr. Lloyd was wearing such clothing, would that

13 (Pages 46 to 49)

Wadlington Reporting Service, Inc.
(312) 372-5561